UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                    MEMORANDUM & ORDER

          v.                                        03-CR-929 (NGG)


VINCENT BASCIANO, and
PATRICK DEFILIPPO,

                    Defendants.
-------------------------------------------------------X

GARAUFIS, United States District Judge.

          Defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo")

(collectively "Defendants") were indicted in 2004 by a grand jury in the Eastern District of New

York on racketeering-related charges stemming from their alleged involvement in the Bonanno

crime family. They proceeded to trial in January 2006. On May 9, 2006, the jury returned a

partial verdict, convicting Basciano of Racketeering Conspiracy based on three racketeering acts:

illegal policy or "numbers" gambling, ownership and supervision of joker-poker machines, and

the attempted murder of David Nunez. There was also evidence presented at trial that Basciano

received additional proceeds of the Bonanno crime family enterprise's criminal activities in the

form of "tribute money."

          The jury convicted DeFilippo of Racketeering Conspiracy based on four racketeering

acts: the ownership and supervision of joker-poker machines, the attempted murder of Nunez,

illegal bookmaking, and the conspiracy to collect extensions of credit through extortionate

means. DeFilippo was also convicted of counts two through four of the indictment, pertaining to

1

illegal gambling, and count five, conspiring to collect extensions of credit through extortionate means.

The Government now moves this Court for a preliminary order of forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. The Government seeks $11,400,000 from Basciano in forfeited assets: $5,200,00 from policy gambling revenue, $6,000,000 from joker poker machine revenue, and $200,000 in received tribute money. (Government's Memorandum of Law in Support of Findings of Fact on the Criminal Forfeiture Allegations ("Gov. Mem.") at 16.) From DeFilippo, the Government seeks $4,376,787 in forfeited assets: $1,500,000 from joker poker machine revenue, $2,839,200 from illegal sports betting revenue, and $37,587 from loansharking revenue. (Id. at 31.) Basciano now moves this Court to stay the forfeiture proceeding until all of his pending criminal proceedings have concluded. (Memorandum of Law in Opposition to the Government's Proposed Findings of Fact and Request for a Preliminary Order of Forfeiture ("Basciano Mem.") at 19-22.) For the reasons set forth below, the Government's motion is GRANTED in part and DENIED in part, and Basciano's motion is DENIED.

**DISCUSSION**

Forfeiture under the RICO statute is mandatory. See United States v. Corrado, 227 F.3d 543, 552 (6th Cir. 2000); United States v. Rudaj, No. 04 Cr. 1110 (DLC), 2006 U.S. Dist. LEXIS 45080, at *7 (S.D.N.Y July 5, 2006). A defendant convicted under 18 U.S.C. § 1962 "shall forfeit":

> (1)    any interest the person has acquired or maintained in violation of section 1962;
> (2)    any interest in . . . any enterprise which the person

> has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

18 U.S.C. § 1963(a). The RICO forfeiture provision is broadly drafted, and therefore has "long been liberally construed to reach all 'proceeds' derived from racketeering activity." United States v. Fruchter, 411 F.3d 377, 384 (2d Cir. 2005); see also United States v. Robilotto, 828 F.2d 940, 948 (2d Cir. 1987). Consequently, the Government need not provide a precise calculation of the proceeds. See United States v. Lizza Industries, Inc., 775 F.2d 492, 498 (2d Cir. 1985). And, because forfeiture is imposed on a defendant in personam, the Government need not trace the proceeds to specific assets. Robilotto, 828 F.2d at 949. Each defendant is jointly and severally liable for all foreseeable proceeds derived from the racketeering activity of the enterprise. United States v. Edwards, 303 F.3d 606, 643-44 (5th Cir. 2002); Rudaj, 2006 U.S. Dist. LEXIS 45080 at *8.

Because criminal forfeiture is "an aspect of sentencing," Libretti v. United States, 516 U.S. 29, 49 (1995), issues of fact relating to forfeiture must be established by a preponderance of the evidence, Fruchter, 411 F.3d at 384. Although the total amount of forfeited assets may be determined by "conservatively estimating" the revenue regularly collected or received, the evidence of such revenue may not be overly speculative. Corrado, 227 F.3d at 555, 557-58.

"As soon as practicable after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought," the court "must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P.

32(b)(1).  When a money judgment is sought, the court determines the appropriate amount of payment.  Id.  If the court finds that the property sought by the Government is subject to forfeiture, it must enter a preliminary order of forfeiture without regard to the interest of any third party in the property.  Id. at 32.2(b)(2).

## I.     Forfeiture Related to Basciano's Conviction

Based on Basciano's conviction for RICO conspiracy, the Government now seeks forfeiture in the amount of $11,400,000 from Basciano: $5,200,000 from policy gambling proceeds, $6,000,000 from joker poker machine proceeds, and $200,000 in received tribute money.  (Gov. Mem. at 16.)  Basciano now seeks to stay all forfeiture proceedings until the conclusion of all of his pending criminal cases.  (Basciano Mem. at 19-22.)

According to Rule 32.2 of the Federal Rules of Criminal Procedure, forfeiture proceedings must commence "as soon as practicable" after a finding of guilt.  Section 1963 does not contain a stay provision.  Further, there is nothing to suggest that these forfeiture proceedings, which are unrelated to the specific criminal activities charged in the other criminal cases pending against Basciano, would jeopardize "his right to aggressively challenge the taking of his property without due process of law" for fear of self-incrimination, as he now argues. (See Basciano Mem. at 19.)   The specific racketeering acts with which Basciano is charged in the other pending criminal matters are based on activities separate from those of which he was convicted.  Furthermore, the only similarity among the cases – Basciano's association with the Bonanno crime family – was already conceded by Basciano at trial.  (See Tr. at 2011, 2457, 2461, 10119.)  Therefore, Basciano's motion to stay the forfeiture proceedings is denied.

The Government moves for a preliminary order of forfeiture with respect to each of the

criminal activities of which Basciano and DeFilippo were convicted at trial. Those activities will be addressed in turn.

### A. Policy Gambling

Based on the evidence presented at trial, the jury found that Basciano managed part of the Bonanno crime family's illegal policy gambling business from January 1979 until January 2003. In calculating the specific sum to be forfeited based on this conviction, the Government assumed a weekly revenue of $5,000 for twenty years. (Gov. Mem. at 20-21.) The evidence clearly supports this calculation. At trial, Anthony Bottone ("Bottone"), who had worked with Basciano in the policy gambling business from the 1980s until 1994, testified that gambling locations regularly earned between $5,000 and $30,000 per week in profits during that time period. (Tr. at 7933, 7938, 7954-55.) Dominic Cicale ("Cicale"), a fellow Bonanno crime family member who worked directly under Basciano, testified that from the end of 2003 until January 2005, he collected and delivered to Basciano approximately $5,400 per week in policy gambling proceeds. He further stated that at some time between 1999 and 2005, Basciano told him that Basciano earned $10,000 per week in profits from policy gambling. Ann Caruncho ("Caruncho"), a girlfriend of Basciano's gambling business partner Anthony Colangelo, Sr. ("Colangelo, Sr."), testified that from 1981 until 1987, Basciano gave her between $2,000 and $3,000 per week as Colangelo, Sr.'s share in policy gambling profits. (Tr. at 8088-90.) Finally, Police Officer Carlo Barbara ("Officer Barbara") testified that he arrested Basciano twice in 1982 for policy gambling. (Tr at 8236-38.)

An estimation of a $5,000 per week policy gambling profit is conservative given Bottone's testimony that profits could be as much as $30,000 per week, Cicale's testimony that

Basciano actually received $5,400 for at least one and one-half years, and Basciano's statement that he had earned $10,000 in policy gambling profits. The twenty year period of earnings is also conservative given the testimony of Caruncho and Cicale, who established that Basciano received revenue from the illegal business for, at the very least, twenty-three years, and Officer Barbara, whose testimony dates Basciano's involvement with policy gambling back to 1982, as Basciano now concedes. (See Basciano Mem. at 9.) That Caruncho's recollection was "vague," as Basciano now notes, is of no moment. (See Basciano Mem at 8-9; Tr. at 8090.) Her testimony was thoroughly consistent with that of the other witnesses who testified to the profitability of policy gambling, and the proof of the proceeds need simply be proven by preponderance of the evidence. See Fruchter, 411 F.3d at 384. Taken altogether, the evidence clearly supports the Government's claim to total proceeds of $5,200,000, and its motion that Basciano be preliminarily ordered to forfeit that amount is therefore granted.

### B. Joker Poker Machines

The jury also found that the evidence at trial proved Basciano's involvement with an illegal joker poker gambling scheme. The evidence that Basciano managed and profited from a joker poker gambling business amply supported the jury's decision. Altogether, eight witnesses testified about Basciano's management of the Bonanno crime family enterprise joker poker business, and established that his role in this illegal industry dated back to the early 1980s and continued throughout the 1990s. Based on the jury's verdict, the Government now seeks $6,000,000 in forfeited assets based on a calculation of $400,000 per year for fifteen years. (Gov. Mem. at 24.) Although it is clear from the witnesses' testimony that Basciano profited immensely from this illegal business, the Government did not elicit at trial adequate evidence

upon which to calculate the specific sum of money involved.

Of the eight witnesses who testified about this issue, only Cicale testified as to the amount of money involved in the joker poker gambling business, and all of the figures he identified were based on hearsay statements. Cicale's testified that, at some time between 1999 and 2005, Basciano told him the following: (1) Basciano made between $300,000 and $500,000 per year from his joker poker business; (2) Basciano had been in the joker poker business for more than twenty years, and (3) Basciano earned an average of $15,000 per month from joker poker machines at one of his locations. (Gov. Mem. at 23-24.) Those statements were neither corroborated nor presented in any context that would permit this Court to evaluate their reliability. Without more, the conclusion could just as easily be drawn that Basciano's estimates of the joker poker machine revenue were made either flippantly or in an attempt to aggrandize his gambling business. Put simply, the statements bear no indicia of accuracy and cannot alone serve as the basis of a forfeiture calculation.

Because the nature of the evidence relied upon by the Government in making a forfeiture calculation is overly speculative, the Government's request for a preliminary order of forfeiture in the amount of $6,000,000 for joker poker gambling is denied. See Corrado, 227 F.3d at 557-58. However, should the Government wish to provide the Court with additional evidence to support its contentions, a hearing will be scheduled as appropriate.

### C.     Tribute Money

The Government also seeks $200,000 in "tribute money" that Basciano received from individuals below him in the Bonanno crime family hierarchy in exchange for protection and service. (Gov. Mem. at 28.) At trial, Cicale testified that he personally collected $300,000 in

tribute money in December 2004 and paid $200,000 of that money to Basciano. (Tr. at 5847-48.) Furthermore, the Government introduced recorded conversations into evidence in which Basciano discussed his plan to levy "tax[es]" on Bonanno crime family subordinates. (Government Trial Exhibit ("Gov. Exh.") 205A.) This evidence adequately supports the Government's calculation and conservatively values the tribute monies paid to Basciano over the course of his more than twenty years of affiliation with the Bonanno crime family. (See Tr. at 4277.) The Government's motion for a preliminary order for $200,000 in forfeited assets is therefore granted.

## II.    DeFilippo

### A.    Joker Poker Gambling

DeFilippo was convicted by the jury of running an illegal gambling business involving joker poker machines. The Government now seeks $1,500,000 in forfeited assets for this illegal activity. The evidence at trial amply supports this calculation. Richard Cantarella ("Cantarella") testified that he received payments from DeFilippo from joker poker gambling on behalf of Joe Massino ("Massino"), then-boss of the Bonanno crime family, in 1992. (Tr. at 4261-63.) Four other witnesses testified that DeFilippo operated joker poker machines throughout New York City for many years. (Tr. at 2782 (Salvatore Vitale ("Vitale")), 4718-19 (James Tartaglione), 5748 (Cicale), 7297 (Generoso Barbieri).) The Government also introduced evidence of a wiretapped conversation in which DeFilippo discussed a joker poker machine which earned $800 per day, and cryptoanalysis of records seized from John Joseph Spirito ("Spirito"), a "soldier" under DeFilippo, which indicated that DeFilippo managed at least eleven joker poker machines. The cryptoanalysis further revealed joker poker meter totals of approximately $500 per day. In

light of this evidence, a calculation of $500 per week for ten years is a conservative estimate of the proceeds of DeFilippo's joker poker gambling business. The Government's motion for a preliminary order that DeFilippo forfeit $1,500,000 is therefore granted.

**B.      Sports-Betting**

The jury also convicted DeFilippo of RICO conspiracy based on his role as a "bookie" for the Bonanno crime family enterprise's sports-betting business from 1990 until 2003. At trial, numerous witnesses testified as to DeFilippo's work as a bookie, including Vitale, who stated that he and Massino transferred their sports betting business to DeFilippo, and Cantarella, who testified that DeFilippo ran an illegal sports-betting business until 2002. (Tr. at 2777-79, 4269-71.) In addition, sports-betting records obtained through a search warrant showed that DeFilippo's business accepted between $7,800 and $50,695 in illegal wagers per day between 2001 and 2002. (Government Trial Exhibits ("Gov. Exhs.") 386, 387.)

The Government now seeks a total of $2,839,200 in forfeited assets from DeFilippo based on a calculation of $7,800 in illegal betting wagers made per day for one year. (Gov. Mem. at 42-43.) The Government's proposal of one year as a basis of the forfeiture calculation is certainly conservative when considering the evidence of the long-standing nature of the Bonanno crime family enterprise's illegal sports-betting business and DeFilippo's participation within it. In light of the evidence that the DeFilippo's business accepted wagers exceeding $50,000 on a daily basis, $7,800 is a conservative number upon which to tabulate the total forfeiture amount. The Government is therefore entitled to a preliminary forfeiture order of $2,839,200 from DeFilippo's illegal sports-betting business.

**C.      Loansharking**

Finally, the Government seeks $37,587 from DeFilippo based on the jury's finding that he extortionately collected debt payments. (Gov. Mem. at 43.) In addition to testimony by Vitale as to DeFilippo's involvement in loansharking, the Government entered into evidence records regarding loans collected jointly by DeFilippo and his "soldier" Emanuel Guaragna ("Guaragna") from 1996 until 2002. (Gov. Exh. 311A, 311B.) These records reflect that DeFilippo and Guaragna collected a total of $75,172 in illegal debt payments. The Government seeks half of that total in forfeited assets from DeFilippo. Because defendants are jointly and severally liable for all foreseeable proceeds derived from the racketeering activity of the criminal enterprise, and because the evidence established that DeFilippo and Guaragna actually collected twice as much money, forfeiture in the amount of $37,587 is a conservative estimate of DeFilippo's revenue from loansharking. See Edwards, 303 F.3d at 643-44. The Government's motion for a preliminary order of forfeiture for $37,587 is therefore granted.

## IV.    Conclusion

As detailed above, the Government's motion for a preliminary order of forfeiture as to Basciano is GRANTED in part and DENIED in part; the Government's motion for a preliminary order of forfeiture as to DeFilippo is GRANTED, and Basciano's motion to stay the forfeiture proceedings is DENIED. A preliminary order of forfeiture is hereby entered in the amount of $5,400,000.00 as to Basciano and $4,376,787.00 as to DeFilippo.

SO ORDERED.

                                                        /s/ Nicholas G. Garaufis
Dated: January 4, 2007                          Nicholas G. Garaufis
Brooklyn, N.Y.                                    United States District Judge